UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOHN M. DEAN

                                         CIVIL ACTION

VERSUS

                                         NUMBER 07-881-RET-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, April 27, 2009.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


JOHN M. DEAN

                                      CIVIL ACTION

VERSUS

                                      NUMBER 07-881-RET-SCR

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY


**MAGISTRATE JUDGE'S REPORT**

Plaintiff John M. Dean brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his claim for disability and supplemental security income (SSI) benefits.


**Background**

Plaintiff was 45 years of age at the time of the ALJ's decision.[1]  Plaintiff graduated from high school and completed two years of college.  With the exception of a brief period of employment as a pastor, the plaintiff had worked as an auto mechanic since 1985.[2]  In July 2005, the plaintiff applied for disability and SSI benefits, claiming that beginning in January 2004, he was no longer able to work because of a back injury and

---

[1] Under the regulations, individuals 45 years of age are classified as younger persons.  20 C.F.R. §§ 404.1563(c) and 416.963(c).

[2] AR pp. 69-92.

resulting pain and limitations.[3]  Plaintiff's applications were denied and the plaintiff filed a request for a hearing before an administrative law judge (ALJ).  The ALJ held a hearing on July 16, 2007 and issued an unfavorable decision on August 8, 2007.[4]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 12, 2004.  At the second step of the five step sequential disability analysis, the ALJ determined that the plaintiff had a combination of severe physical impairments - lumbar degenerative disc disease producing right L5 radiculitis and mid-thoracic compression fractures.  At step three the ALJ concluded that the plaintiff's combination of impairments did not meet or medically equal one of the listed impairments found in Appendix 1 of 20 C.F.R. Part 404, Subpt. P.

In order to determine whether the plaintiff could do either his past relevant work or make an adjustment to other work in the national economy, the ALJ had to evaluate the plaintiff's residual functional capacity (RFC) to perform work-related activities.[5]  The ALJ found that the plaintiff had a residual functional capacity for

---

[3] AR pp. 62-67, 256-58.

[4] AR pp. 33-43, 259-93.

[5] The residual functional capacity determination is the foundation of steps four and five of the sequential disability evaluation process.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

a limited range of sedentary work,[6] specifically, the ALJ determined that:

> [T]he claimant has the residual functional capacity to lift and carry less than 10 pounds frequently, 10 pounds occasionally; to stand and walk for four hours and to sit for six hours out of an eight hour day; to push and pull within the limits of lifting and carrying; to engage in occasional postural movements, with the exception of never balancing, crouching, crawling, climbing ropes, ladders or scaffolds; to manipulate in all directions with the exception of overheard; to see and communicate without restriction and to work within any environment with the exception of working at unprotected heights and around hazardous machinery.[7]

The evidence showed, however, that the plaintiff's past employment as an auto mechanic had exertional requirements that exceeded this residual functional capacity. Therefore, considering the plaintiff's past employment and the testimony of vocational expert Thomas J. Meunier Jr., the ALJ concluded at step four that the plaintiff would no longer be able to do his past relevant work.[8]

The ALJ relied again on the testimony of the vocational expert at the fifth and final step of the disability analysis. In response to the ALJ's questioning, Meunier testified that the positions of booth cashier, food order clerk, and maintenance

---

[6] 20 C.F.R. §§ 404.1567(a) and 416.967(a)(definition of sedentary work).

[7] AR p. 39.

[8] AR pp. 42, 287-88. The hearing transcript stated that the expert's name was Tom Renae. However, the ALJ's decision shows that the expert was Thomas J. Meunier, Jr. AR pp. 36, 50, 260.

dispatching would fall within the hypothetical question presented by the ALJ.  The ALJ cited this evidence in his written decision and concluded that the plaintiff was not disabled because he was capable of making a successful adjustment to alternative work that exists in significant numbers in the national economy.[9]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on September 26, 2007.[10] Therefore, the Commissioner's decision denying the plaintiff's application for disability and SSI benefits is final and appealable under 42 U.S.C. § 405(g).

### Standard of Review

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries:  (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the relevant legal standards.  *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).  If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence is that which is

---

[9] AR pp. 42-43, 287-90.

[10] AR pp. 3-6.

4

relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  It is more than a mere scintilla and less than a preponderance.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131 at 135.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence are for the Commissioner and not the court to resolve.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).[11]

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.  *Bradley v*. Bowen, 809 F.2d 1054, 1057 (5th Cir. 1981); Western *v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

---

[11] It is well-established that in cases brought under § 405(g), evidence external to the administrative record is generally inadmissible, and on judicial review the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.   20 C.F.R. § 404.1505; 20 C.F.R. § 416.905.   The regulations require the ALJ to apply a five step sequential evaluation to each claim for disability and SSI benefits.   20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.   In the five step sequence used to evaluate claims, the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment or combination of impairments, (3) the impairment(s) meets or equals the severity of a Listing impairment in Appendix 1 of the regulations, (4) the impairment(s) prevents the claimant from performing past relevant work, and (5) the impairment(s) prevents the claimant from doing any other work.   *Masterson*, 309 F.3d at 271.

Listing impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect.   Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results.   For a claimant to show that his impairment matches a Listing he must demonstrate that it meets all of the medical criteria specified in the listing.   An impairment that exhibits only some of the criteria, no matter how severely, does not

qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. § 404.1525; 20 C.F.R. § 416.925.  To show that his impairments are equivalent to a Listing impairment, the claimant must present medical findings equal in severity to all the criteria for the impairment most like his impairment. *Id.*; 20 C.F.R. § 404.1526; 20 C.F.R. § 416.926.

At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work.  The burden of proving disability rests on the claimant through the first four steps.  If the claimant shows at step four that he is no longer capable of performing any of his past relevant work, the burden shifts to the Commissioner at step five to show that the claimant is able to engage in some type of alternative work that exists in significant numbers in the national economy. *Myers*, *supra*.  If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work.  *Boyd*, 239 F.3d at 705.

A claimant has a statutory right to counsel in Social Security proceedings,[12] and a claimant must receive adequate notice of his right to representation.  *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003).  A claimant may, however, waive this right if he is given sufficient information to enable him to decide

---

[12] 42 U.S.C. § 406; 20 C.F.R. §§ 404.1706, 1720 and 416.1506, 1520.  There is no constitutional right to counsel at a Social Security hearing.  *Norden v. Barnhart*, 77 Fed.Appx. 221 (5th Cir. 2003); *Riecke v. Barnhart*, 184 Fed.Appx. 454 (5th Cir. 2006).

intelligently whether to retain counsel or proceed *pro se*. *Norden*, *supra*, citing, *Clark v. Schweiker*, 652 F.2d 399, 403-404 (5th Cir. 1981).    Sufficient  information  includes  explanations  of  the possibility of free counsel, a contingency fee agreement, and the limitation on attorney's fees of 25% of past due benefits awarded. *Id.*

A claimant who asserts a defect in the waiver of his right to be represented by counsel, must also show that he was prejudiced by the absence of counsel.   The claimant must point to evidence that would have been adduced and that could have changed the result had he been represented by counsel.  *Castillo*, *supra*; *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996).

The Hearings, Appeals and Litigation Law Manual (HALLEX) is a Social Security Administration internal policy manual that does not have  the  force  of  law.[13]    Its  purpose  is  to  convey  guiding principles, procedural guidance and information to the Office of Hearings  and  Appeals  staff.  However,  the  Fifth  Circuit  has expressed a strong preference for requiring the Social Security Administration to follow its own internal procedures by stating:

> While HALLEX does not carry the authority of law, this
> court has held that where the rights of individuals are
> affected, an agency must follow its own procedures, even
> where the internal procedures are more rigorous than
> would otherwise be required. If prejudice results from a
> violation, the result cannot stand. (internal quotations
> omitted).

_____

[13] *Smith v. Astrue*, 2008 WL 4200694 (S.D.Tex. Sept. 9, 2008).

8

*Newton,* 209 F.3d at 459, citing, *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981).

Therefore, the court requires a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision. *Id.; Shave v. Apfel*, 238 F.3d 592, 596-597 (5th Cir. 2001); *Smith v. Astrue, supra.*

## <u>Analysis</u>

Plaintiff raised only one claim of error in his appeal of the Commissioner's decision: plaintiff asserted that the ALJ failed to properly advise him of his right to counsel.  Plaintiff argued that because prejudice  resulted from this failure, the ALJ's error requires reversal and remand of this case to the Commissioner. Plaintiff pointed to certain statements by the ALJ at the beginning of the administrative hearing, and argued that the statements did not comport with Social Security's HALLEX 1-2-6-52A directive on advising unrepresented claimants of the right to representation.

In response, the Commissioner argued that the pre-hearing notices sent to the plaintiff, and the ALJ's oral confirmation at the hearing, adequately informed the plaintiff of his right to representation.  The Commissioner maintained that even if there was an error in the process of notification and waiver of the plaintiff's right to representation, the record establishes that no prejudice resulted from it.

9

Review of the administrative record as a whole demonstrates that the Commissioner's arguments are persuasive, and that the plaintiff's claim of reversible error is unsupported.

Plaintiff represented himself during the administrative proceedings before the Commissioner. A review of the record establishes that the plaintiff was notified in writing several times of his right to have a lawyer or someone else represent him as he moved through the administrative process.[14] The first written notice of the plaintiff's right to representation was included in the "Notice of Disapproved Claims." In the notice the plaintiff was advised of his rights, and he was informed of the possibility of free counsel, contingency agreements, and the statutory limitation on the amount of attorney's fees.[15]

After the plaintiff requested an ALJ hearing he received another notice about preparing for the hearing. This notice informed the plaintiff again of his right to be represented by a lawyer or another person. It included a statement that some lawyers would charge a fee only if benefits were received, some organizations may be able to provide representation free of charge, and a representative could not charge or receive any fee unless it

---

[14] AR pp. 33-35, 45, 54-57, 59-61.

[15] AR pp. 57. Enclosed with the notice was a Social Security publication entitled "Your Right to Question the Decision Made on Your Claim." A copy of this publication is attached to defendant's memorandum. Record document number 13, Exhibit A. The contents of this publication have not been considered.

was approved by Social Security.[16]  This same notice also provided the plaintiff with a list of groups that could help him find a representative free of charge.  In two places, this page emphasized that some attorneys might by willing to take a case under an agreement whereby no fee would be charged unless the claim was allowed.[17]  It reiterated that a representative had to first obtain approval from Social Security for any fee charged.[18]  The Notice of Hearing mailed to the plaintiff, which set the date, time and place of the ALJ hearing, also included a general statement that the plaintiff could choose a person to represent him, and if he wanted a representative he should get one right away.[19]

After the ALJ hearing, the notice of the ALJ's unfavorable decision again explained the plaintiff's right to representation if he decided to file an appeal with the Appeals Council.  The explanation essentially tracked the information provided in the Notice of Disapproved Claim.[20]  Plaintiff was again told about the availability of free legal services, contingency agreements, the

---

[16] AR p. 59.

[17] AR p. 61.

[18] *Id*.  Enclosed with the notice was a Social Security publication entitled "Your Right to Representation."  AR p. 59.  A copy of this publication is attached to the defendant's memorandum. Record document number 13, Exhibit B.  The contents of this publication have not been considered.

[19] AR p. 45.

[20] AR pp. 34, 57.

requirement of Social Security approval of fees, and the 25% limit on withholding from past due disability benefits to pay for any fees.

The record established that the plaintiff has a high school education and two years of college.[21]   Plaintiff did not assert and there is no evidence in the record that the plaintiff did not receive the notices, or that he was unable to understand the written information and forms advising him of his right to representation.   Nor did the plaintiff contend that the written notices he received prior to the administrative hearing were inadequate, or failed to comply with the statutory requirement of informing claimants of their right to representation in Social Security cases.

Plaintiff's entire argument rests on his allegation that the ALJ did not properly advise him of his rights or obtain a valid waiver at July 16, 2007 the  hearing.   Plaintiff asserted that the ALJ's statement at the beginning of the hearing did not comply with the HALLEX instructions.   Plaintiff argued further that the amount and frequency of his pain medication and difficulty concentrating, interfered with his decision making process and his ability to effectively represent himself during the ALJ hearing.   Based on the ALJ's error and his impaired abilities, the plaintiff claimed that there was no valid waiver of his right to representation, and that

---

[21] AR pp. 76, 261.

12

without counsel he was prejudiced in his ability to question the vocational expert.

The record of the hearing shows that the ALJ made the following comments during his opening statement:

> I note for the record, sir, that you are not represented. There's certainly no requirement that you have representation. I understand, to the best of your knowledge, then you have several years of college. You obviously are literate. You can read, write, understand English so I certainly will permit you to proceed on your own, sir.[22]

It is apparent that this statement does not follow the questions provided in the HALLEX. The ALJ did not ask the plaintiff whether he received and understood the notices about his right to representation. The ALJ also did not secure on the record a statement from the plaintiff concerning his decision on representation or obtain a written waiver. The ALJ simply made a statement acknowledging the fact that the plaintiff was not represented at the hearing, and made a finding based on the plaintiff's educational level that the plaintiff could proceed without a representative.

Nevertheless, the pre-hearing notices and several other factors establish a valid waiver of the plaintiff's right to representation. While the plaintiff did not sign a waiver or specifically state at the hearing that he waived his right to an attorney, the plaintiff went through the entire hearing and did not

---

[22] AR p. 261.

object at any time to proceeding without an attorney.[23]  A waiver can easily be implied from this conduct.  There is also nothing in the record that undermines the ALJ's conclusion about the plaintiff's educational level and capacity to understand.  Although the record contains some statements by the plaintiff and his daughter that the plaintiff had trouble concentrating and remembering, the medical records contained no evidence that the dose or frequency of the plaintiff's pain medication made it difficult for the plaintiff to concentrate/remember, or impaired his ability to think and understand.[24]  Therefore, there is no basis to conclude that the plaintiff was not capable of making a choice to proceed on his own, or actually proceeding without a representative.

In *Castillo v. Barnhart* the claimant received adequate pre-hearing written notices and affirmatively confirmed on the record at the hearing that she waived her right to representation.[25]  The ALJ's statements in this case are clearly not the same as the questions asked by the ALJ in *Castillo,* and the plaintiff here did not give a specific statement that he waived his right.  Thus, the facts of this case are distinguishable from the facts supporting a

---

[23]  The ALJ hearing was held on July 16, 2007.  On a questionnaire dated March 14, 2007, the plaintiff stated that he was not represented and that he did not plan to hire a representative.  AR pp. 105-06.

[24]  AR pp. 9, 194, 199, 227-28, 231, 235, 281-82.

[25]  *Castillo*, 325 F.3d at 552, n. 4.

14

valid waiver in *Castillo.*  Nevertheless, the waiver implied by the plaintiff's conduct at the hearing, along with the absence of objective evidence that the plaintiff did not understand the notices or was not capable of making a choice to proceed without a representative, is sufficient to find a valid waiver in this case.

Even assuming there is some factual basis for the plaintiff's argument that he did not validly waive his statutory right to representation, the plaintiff failed to establish any prejudice. Plaintiff generally asserted that he was prejudiced because he lacked the mental ability to effectively represent himself and conduct a proper cross examination of the vocational expert. However, the plaintiff failed to suggest or demonstrate that had he been represented by counsel, there is some evidence which would have been adduced from the expert that could have changed the result.  For example, the plaintiff did not argue or suggest that if counsel had questioned the expert, some information could have been brought out that would have shown that he could not perform any of the specific jobs identified by the expert or other alternative work.[26]

Plaintiff did not assert any errors related to the ALJ's RFC determination, or his findings at steps four and five of the

---

[26] If the Commissioner meets his burden at the fifth step to show that the claimant is able to engage in some type of alternative work that exists in significant numbers in the national economy, the claimant must then show that he cannot in fact perform the work suggested.  *Boyd*, 235 F.3d at 705.

15

disability analysis.[27]   Review of the record does not reveal any errors at these steps.   Furthermore, the record as a whole demonstrates that sufficient evidence supports the ALJ's RFC determination,[28] and his conclusion that the plaintiff could no longer work as a mechanic, but could perform alternative work that exists in significant numbers in the national economy.

Because the plaintiff was not capable of a full range of sedentary work, the ALJ correctly obtained and relied on the testimony of the vocational expert at the fifth step of the disability analysis.[29]   The record of the administrative hearing shows that the hypothetical question to which the expert responded accurately reflected the RFC determination of the ALJ.[30]   Plaintiff

----

[27] It is unnecessary to recite or summarize all of the medical evidence.  The medical evidence demonstrates that the plaintiff has pain and limitations resulting from problems with his spine at multiple levels.  For this condition the plaintiff received treatment in the form of medications, physical therapy and pain blocking injections.  Consistent with this evidence the ALJ found at step two that the plaintiff had severe impairments consisting of lumbar degenerative disc disease producing right L5 radiculitis, and mid-thoracic compression fractures.  AR p. 38.  Plaintiff did not claim that the ALJ erred in his finding at step two.

[28] AR pp. 209-16, 273-80.

[29] *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

[30] AR pp. 39, 287-88.  The ALJ also presented an alternative hypothetical question to the expert, which included limitations that fully credited the plaintiff's statements regarding the effects of pain and pain medication.  AR pp. 290-92.  However, in his written decision the ALJ determined that the plaintiff's statements regarding the limiting effects of his impairments were
(continued...)

was also given the opportunity to question the expert at the administrative hearing.[31]   The testimony of the vocational expert supported the finding that the plaintiff was not able to perform his past work as an auto mechanic and the plaintiff had only a residual functional capacity for a limited range of sedentary work. According to Meunier, the plaintiff was capable of making an adjustment to other work that exists in significant numbers in the national economy.[32]   The jobs identified by him constitute the substantial evidence necessary to support the finding at the final step that the plaintiff is not disabled.

## Recommendation

It is the recommendation of the magistrate judge that, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security denying the claim of John M. Dean for disability and supplemental security income (SSI) benefits be affirmed and this action be dismissed.

Baton Rouge, Louisiana, April 27, 2009.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[30](...continued)
not entirely credible.  AR p. 40.

[31] *Bowling*, *supra*; AR p. 292.

[32] AR pp. 285-90.

17